<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

| | |
|---|---|
| HALIMAH R. MUHAMMAD, | Case No.:  2:17-cv-03563 (PAZ) |
| Plaintiff, | **OPINION** |
| v. | |
| NANCY A. BERRYHILL, | |
| Defendant. | |

---

**APPEARANCES:**

DANIEL SYLVESTER JONES
LAW OFFICES OF HARRY J. BINDER & CHARLES E. BINDER
485 MADISON AVENUE, SUITE 501
NEW YORK, NY  10022
       On behalf of Plaintiff

MAIJA PELLY DIDOMENICO
SPECIAL ASSISTANT U.S. ATTORNEY
C/O SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
P.O. BOX 41777
PHILADELPHIA, PA  19101
       On behalf of Defendant

**PAUL A. ZOSS, United States Magistrate Judge.**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Halimah R. Muhammad

for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (42 U.S.C.

§§ 401, et seq.) and Supplemental Security Income ("SSI") under Title XVI of the Social Security

Act (42 U.S.C. §§ 1381, et seq.).  Plaintiff appeals from the final decision of the Administrative

Law Judge ("ALJ") denying the applications; Defendant, the Commissioner of Social Security ("the Commissioner"), opposes Plaintiff's appeal.[1]  After careful consideration of the record, including the ALJ hearing transcripts, the ALJ's decision, and the pleadings and memoranda of the parties, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f).  For the reasons set forth below, the Court reverses the Commissioner's decision that Plaintiff was not disabled and remands the case in accordance with the following instructions.

## I.     PROCEDURAL HISTORY

In February 2014, Plaintiff filed applications for DIB and SSI alleging a disability onset date of December 4, 2012.  (R. 174-85.)[2]  On May 6, 2013, the Commissioner determined that Plaintiff was not disabled and denied the applications.  (R. 76, 83.)  Plaintiff filed for reconsideration, and her applications were again denied on September 23, 2013.  (R. 90, 99.)  On April 28, 2015, an Administrative Law Judge held a hearing on Plaintiff's applications; Plaintiff was represented by counsel at the hearing.  (R. 42-68.)  On June 15, 2015, the ALJ issued a decision denying Plaintiff's applications.  (R. 22-41.)  On March 20, 2017, the Appeals Council denied Plaintiff's appeal (R. 1-7), thereby affirming the ALJ's decision as the "final" decision of the Commissioner.  On May 18, 2017, Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g)

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security.  On March 6, 2018, the Government Accountability Office stated that, as of November 17, 2017, Ms. Berryhill's status violated the Federal Vacancies Reform Act, which limits the time a position can be filled by an acting official and "[t]herefore Ms. Berryhill was not authorized to continue serving using the title of Acting Commissioner[.]"  *Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1988 Commissioner*, Social Security Administration, Government Accountability Office (Mar. 6, 2018).  However, Ms. Berryhill continues to functionally lead the Social Security Administration from her position of record as Deputy Commissioner of Operations.  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the defendant in this suit.

[2] "R." refers to the continuous pagination of the administrative record.  ECF No. 5.

and 42 U.S.C. § 1383(c)(3).  ECF No. 1.  On April 10, 2018, Plaintiff consented to have a U.S. Magistrate Judge conduct all further proceedings in the case to disposition pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  ECF No. 11.[3]  The case was reassigned to the undersigned Magistrate Judge on June 28, 2018.

## II.    LEGAL STANDARD

### A.    <u>Standard of Review</u>

This Court has plenary review of legal issues decided by the ALJ in reviewing applications for DIB and SSI.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence.  *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 (JLL), 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential one, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion."  *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial

---

[3] Defendant has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision.  *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484 (RBK), 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Coleman*, 2016 WL 4212102 at *3 (citing *Schonewolf*, 972 F. Supp. at 284-85) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978))).

Although the ALJ is not required "to use language or adhere to a format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of

4

findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984)). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).  A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.  In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays.  *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).  An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits."  *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

      **B.**      **<u>Standard for Awarding Benefits</u>**

      Under the Social Security Act, an adult claimant (i.e., a person over the age of eighteen) is disabled and eligible for DIB or SSI based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  20 C.F.R. §§ 404.1505(a), 416.905(a).[4]  An impairment is "medically determinable" if it results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  Thus, an impairment must be established by objective medical evidence from an acceptable medical source and cannot be established by a statement of symptoms, a diagnosis, or a medical opinion.  *Id*. §§ 404.1521, 416.921.

---

[4] Although the standards for disability are the same for both DIB and SSI, these are separate government programs subject to different qualification requirements.

The process for determining an adult's claim for DIB or SSI involves a five-step sequential inquiry. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a).[5] The claimant bears the burden of proof at Steps One through Four. At Step Five, the burden shifts to the Commissioner. *Id.* §§ 404.1512, 416.912; *see Holley v. Colvin*, 975 F. Supp.2d 467, 476-77 (D.N.J. 2013), *aff'd sub nom. Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167 (3d Cir. 2014). At each Step, the ALJ must consider the combined effect of all of the claimant's physical and mental impairments without regard to whether any single impairment, if considered separately, would be of sufficient severity to proceed to the next Step. 20 C.F.R. §§ 404.1523(c), 416.923(c).

At Step One, the ALJ decides whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is work activity that involves doing significant physical or mental activities and is usually done for pay or profit. *Id.* §§ 404.1572(a) & (b), 416.972(a) & (b). If the claimant is engaging in such activity, then the inquiry ends because the claimant is not disabled.

"The [Step Two] inquiry is a de minimis screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). At this Step, the ALJ decides whether the claimant has a medically determinable impairment or a combination of such impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is severe if it significantly limits a claimant's ability to perform basic work activities. An impairment or combination of impairments is not severe if the claimant has a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional

---

[5] This case arises from a claim filed before March 27, 2017 and is therefore analyzed by this Court – as it was by the ALJ – under 20 C.F.R. §§ 404.1527 and 416.927.

limitations. *Id*. §§ 404.1522, 416.922. If the claimant does not have a severe impairment or combination of impairments, then the inquiry ends because the claimant is not disabled.

At Step Three, the ALJ decides whether the claimant's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment(s) in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's specific impairment is not listed, the ALJ will consider the most closely analogous listed impairment for purposes of deciding medical equivalence. *Id*. §§ 404.1526(b)(2), 416.926(b)(2). If the claimant has an impairment or combination of impairments that meets or medically equals a Listing, then the claimant is presumed to be disabled as long as the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. §§ 404.1509, 416.909.

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC"), determine the physical and mental demands of the claimant's past relevant work, and determine whether claimant has the level of capability needed to perform past relevant work. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). RFC is the claimant's maximum remaining ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. Past relevant work is work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the disability date. In addition, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *Id*. §§ 404.1560, 404.1565, 416.945, 416.960. If the claimant's RFC enables her/him to perform past relevant work, then the claimant is not disabled.

At Step Five, the ALJ must decide whether the claimant, considering her/his RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If the claimant is incapable of doing so, then s/he is presumed to be disabled if her/his impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.  Otherwise, the claimant is not disabled.

In deciding the claimant's ability to perform other jobs that exist in significant numbers in the national economy, the ALJ must consider whether the claimant's impairment and symptoms result in exertional and/or non-exertional limitations.  The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertion levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id*. at §§ 404.1569a(a) & (b), 416.969a(b).  Non-exertional limitations affect a claimant's ability to meet all other demands of a job (i.e., non-strength demands), including but not limited to difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.  *Id*. §§ 404.1569a(c), 416.969a(c).

If the claimant has no non-exertional limitations and can perform all or substantially all exertion demands at a given level, then the ALJ must use the Medical-Vocational Rules (also referred to as "Grid Rules") found at 20 C.F.R. § 404, Subpart P, Appendix 2.  20 C.F.R. §§ 404.1569a(b), 416.969a(b).  The Grid Rules reflect various combinations of RFC, age, education, and work experience and direct a finding of disabled or not disabled for each combination.  If the claimant also has any non-exertional limitations or cannot perform substantially all the exertional demands at a given level, then the Grid Rules are used as a

framework for decision-making unless there is a rule that directs a conclusion of disabled without considering the additional non-exertional or exertional limitations. *Id.* §§ 404.1569a(d), 416.969a(d).   If the claimant has solely non-exertional limitations, then the Grid Rules provide a framework for decision-making. *Id.* §§ 404.1569a(c), 416.969a(c).

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 51 years old on the alleged onset date of December 4, 2012, and her date last insured was December 31, 2017.  (R. 27, 35.)  At Step One of the decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (R. 121.)  At Step Two, the ALJ found that Plaintiff had the following severe impairments:  annular tears of the spine with right sided radiculopathy, and status post right knee surgery.  (R. 27.)  The ALJ also found at Step Two that Plaintiff had the following non-severe impairments:  obesity, hypertension, and depression.  (R. 28-30.)  At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any Listing.  (R. 30-31.)  At Step Four, the ALJ found that Plaintiff had the RFC to perform light work subject to various exertional and non-exertional limitations.  (R. 31-34.)  The ALJ further found at Step Four that Plaintiff was able to perform her past relevant work as an education paraprofessional as it is generally performed.  (R. 34-35.)  At Step Five, the ALJ alternatively found both that a finding of not disabled would be directed by Grid Rule 202.14 if Plaintiff had the RFC to perform the full range of light work, and that at least 3 jobs – mail sorter, weld inspector, and microfilm mounter – existed in significant numbers in the national economy for an individual with Plaintiff's age, education, work experience, and RFC.  (R. 35-36.)  The ALJ therefore concluded that Plaintiff was not disabled at any time between the alleged onset date and the decision date.  (R. 36-37.)

Plaintiff's attack on the ALJ's decision is threefold. First, Plaintiff contends that the ALJ erroneously found at Step Two that depression was not a severe mental impairment. Second, Plaintiff contends that the ALJ erroneously weighed the medical opinions at Step Four in determining the RFC. Third, Plaintiff contends that the ALJ erroneously assessed Plaintiff's subjective symptoms. Plaintiff asks the Court to reverse and remand for payment or, alternatively, for a new hearing. Defendant contends that the ALJ's decision should be affirmed in its entirety because it correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence.

## IV.    SUMMARY OF RELEVANT EVIDENCE

### A.    Medical Evidence Before The ALJ.

#### 1.    Treating Physicians.

In December 2012, Plaintiff was evaluated by Dr. Gerald F. Gaughan (physical medicine and rehabilitation) for lower back pain that radiated down both legs and across the knees.[6] He diagnosed post-traumatic back pain with lumbosacral radiculopathy. Dr. Gaughan prescribed Flexeril and Nabumetone, recommended x-rays and physical therapy, and ordered an EMG/NCV study of the lower extremities. Dr. Gaughan opined that Plaintiff was 100% disabled based on physical examination findings. He reaffirmed this opinion in subsequent treatment notes.

In January 2013, Plaintiff returned to Dr. Gaughan for back pain and lower extremity weakness. Dr. Gaughan reported that the EMG/NCV study revealed findings consistent with bilateral L5-S1 radiculopathy. He prescribed Flexeril and Relfen, recommended continued

---

[6] The record contains Dr. Gaughan's treatment records for the period between December 2012 –June 2013. (R. 270-324.)

physical therapy, and ordered a lumbar MRI. Plaintiff's condition was unchanged when she returned to Dr. Gaughan in February 2013.

In March 2013, the MRI revealed disc bulges at every level of the lumbar spine from L3 down; straightening of the lumbar spine; disc bulge with superimposed central posterior annular tear; left paracentral disc herniation superimposed on disc bulge; left far annular tear; fluid in the facet joints bilaterally suggesting acute facet inflammation at L4-L5; and a disc bulge with indentation of ventral margin of the thecal sac at L5-S1.

In April 2013, Plaintiff returned to Dr. Gaughan for back pain that radiated to both legs with numbness and weakness, left worse than right. He diagnosed post-traumatic back pain, L4-L5 and L5-S1 disc bulges with L4-L5 annular tears, and herniation to the left with lumbosacral radiculopathy. He recommended a back brace and a pain management consultation. Plaintiff complained of increased radicular pain in her lower extremities when she returned to Dr. Gaughan in May 2013.

In June 2013, Plaintiff was evaluated by Dr. Douglas C. Schottenstein (pain management) for lower back pain with radiating pain to the left leg and paresthesia as well as right knee pain.[7] He diagnosed lumbar radiculitis and right knee pain. Also in June 2013, Plaintiff returned to Dr. Gaughan for worsening right leg pain and right knee pain from extra weight bearing. He diagnosed right knee pain and requested approval for testing and treatment.

In August 2013, Plaintiff returned to Dr. Gaughan for persistent radicular back pain, worsening numbness and weakness in right leg, and persistent right knee pain. He recommended physical therapy and pain management.

---

[7] The record contains Dr. Schottenstein's treatment records for the period between March 2013—December 2014. (R. 369-401, 410-641.)

In October 2013, Plaintiff returned to Dr. Schottenstein for lower back pain with paresthesia in the left leg and foot. He prescribed Tramadol and performed a lumbar epidural steroid injection ("ESI"). Dr. Schottenstein noted that Plaintiff was totally disabled for her current job. He reaffirmed this opinion in subsequent treatment notes. Also in October 2013, Dr. Gaughan completed a Multiple Impairment Questionnaire. (R. 325-68.)[8] Citing treatment notes and diagnostic testing, he diagnosed post-traumatic back pain, L4-5 and L5-S1 disc bulges, L4-L5 annular tear and herniation to the left, bilateral lumbosacral radiculopathy, and consequential right knee injury. Dr. Gaughan rated Plaintiff's pain at 8 on a 10-point scale, and he rated her fatigue as 4-6 on a 10-point scale. He opined that in an 8-hour workday Plaintiff could sit for less than 1 hour total, stand/walk less than 1 hour total, and must get up every 30 minutes when sitting and move around for 30 minutes. Plaintiff could lift/carry 10 pounds occasionally; she had significant limitations performing repetitive lifting and reaching; she had moderate limitations in the ability to use the arms for reaching, including overhead; and she required a job with ready access to the restroom. Plaintiff's symptoms were frequently severe enough to interfere with her attention and concentration. Dr. Gaughan reported that these limitations had been present since a work-related accident on December 3, 2012.

In November 2013, Plaintiff advised Dr. Schottenstein that she experienced minimal improvement from the prior month's ESI. He diagnosed lumbar radiculitis, presumable lumbar facet osteoarthritis, and right knee pain. Dr. Schottenstein also scheduled a bilateral medial nerve branch block at L2-S1 for December 2013.

In January 2014, Plaintiff advised Dr. Schottenstein that she experienced 50% relief from the prior month's nerve branch block. He prescribed Valium and scheduled a second block for

---

[8] The ALJ's decision erroneously attributed this Questionnaire response to Dr. Schottenstein. (R. 33.)

February 2014.  In March 2014, Plaintiff advised Dr. Schottenstein that she experienced minimal improvement from the second block.  He prescribed Neurontin and scheduled a lumbar facet radiofrequency ablation for the left side in April 2014 and for the right side in May 2014.  In June 2014, Plaintiff advised that she experienced minimal improvement from the ablations.  Dr. Schottenstein's subsequent treatment notes (through December 2014) reflect no significant changes in Plaintiff's condition or treatment.

Also in January 2014, Dr. Schottenstein completed a Multiple Impairment Questionnaire. (R. 402-09.)  He diagnosed lumbar radiculitis, citing positive straight leg raising test on the left, decreased muscle strength in the left lower extremity hip flexor of 5-/5, an MRI of the lumbar spine, and a lower extremity EMG study.  Plaintiff's primary symptoms were constant lower back pain with associated paresthesia and spasms in the left leg and foot.  Her pain was rated at 8 on a 10-point scale; her fatigue was rated at 5 on a 10-point scale.  Dr. Schottenstein opined that in an 8-hour workday, Plaintiff could sit 4 hours total, stand/walk 2 hours total, and must get up every 30 minutes when sitting and move around for 5-10 minutes.  She would need to take unscheduled breaks to rest every 1-2 hours during an 8-hour workday (with each break lasting an average of 10 minutes), and she was likely to be absent from work 2-3 times per month.  Plaintiff could lift/carry 10 pounds occasionally.  Dr. Schottenstein reported that these limitations had been present since a work-related accident on December 3, 2012.

In June 2014, Plaintiff was evaluated by Dr. Leon E. Popovitz (orthopedic surgery) for right knee pain with numbness and tingling.[9]  An MRI of the right knee revealed maceration of lateral meniscus; distal quadriceps tendinopathy; mild proximal patellar tendinopathy; small joint

---

[9] The record contains Dr. Popovitz's treatment records for the period between May—December 2014.  (R. 642-52.)

effusion; pre- and infrapatellar subcutaneous fat pad edema; and possible leaking popliteal cyst. Dr. Popovitz diagnosed a lateral meniscus tear and performed a right knee arthroscopy, partial lateral meniscectomy, and chondroplasty of patella chondromalacia grade iii.  In July 2014, Plaintiff complained of increased pain and swelling in the right lower leg and calf.  Dr. Popovitz prescribed continued physical therapy and a nonsteroidal anti-inflammatory.  In September 2014, Plaintiff complained of moderate right knee pain.  Dr. Popovitz diagnosed Patellofemoral Syndrome; he prescribed continued physical therapy and Diclofenac.  In October 2014, Plaintiff complained of right knee pain with limited range of motion.  Dr. Popovitz prescribed continued physical therapy.

In February 2015, Dr. Charles E. Robins (psychologist) completed a Mental Impairment Questionnaire and an accompanying letter.  (R. 653-59.)[10]  Dr. Robins diagnosed Plaintiff with trauma- and pain-induced depression that exacerbated her physical symptoms and likely would cause her absence from work more than 3 times per month.  He opined that she had marked limitation in the ability to perform at a consistent pace without rest periods of unreasonable length or frequency.  He also opined that Plaintiff had moderate to marked limitation in the ability to remember locations and work-like procedures; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule and consistently be punctual; and work in coordination with or near others without being distracted by them.  Dr. Robins further opined that Plaintiff had moderate limitation in the ability to sustain ordinary routine without supervision; make simple work-related decisions;

[10] Dr. Robins stated that he has treated Plaintiff on a weekly basis since December 2013, but none of his treatment records were included in the record.

15

complete a workday without interruptions from psychological symptoms; respond appropriately to workplace changes; and travel to unfamiliar places or use public transportation.

### 2.    Non-Examining Physicians.

In May 2013, Dr. Joseph Udomsaph (State Agency reviewing consultant), did not prepare an RFC because he opined that Plaintiff's impairments did not meet the 12-month durational requirement. (R. 77-82, 84-89.) In September 2013, Dr. Raymond Briski (State Agency reviewing consultant) opined on reconsideration that Plaintiff could frequently lift/carry up to 10 pounds; could occasionally lift/carry up to 20 pounds; could sit, stand, and walk each for up to 6 hours in an 8-hour workday with regularly scheduled breaks; had unlimited pushing/pulling ability; and could frequently climb ramps/stairs/ladders/ropes/scaffolds, balance, stoop, kneel, crouch, or crawl. (R. 91-98, 100-07.)

### B.    Medical Evidence Not Before The ALJ.

Plaintiff submitted the following additional medical evidence to the Appeals Council: treatment records from Dr. Gaughan for the period between December 2012 and November 2014; treatment records from Dr. Schottenstein for May 2015; treatment records from Dr. Robins for the period between January and June 2015; and an opinion letter from Dr. Robins dated September 29, 2015. (R. 660-729.) The Appeals Council expressly considered the additional evidence and concluded that it did "not provide a basis for changing the Administrative Law Judge's decision." (R. 2, 6.) The Court cannot consider this additional evidence in reviewing the ALJ's decision even though some of the evidence pre-dated the decision. *See* 42 U.S.C. § 405(g), Sentence Four; *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001) ("No statutory provision authorizes the district court to make a decision on the substantial evidence standard based on new and material evidence never presented to the ALJ."); *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991) ("Because [ ] evidence was not before the ALJ, it cannot be used to argue that the ALJ's decision was not

supported by 'substantial evidence.'") (citing *U.S. v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963)).[11]

### C.     Function Reports/Hearing Testimony.

Plaintiff submitted Function Reports on March 12 and July 12, 2013 (R. 215-22, 238-44), and Plaintiff's friend submitted a Third-Party Function Report on March 13, 2013 (R. 223-30). Plaintiff testified during the April 2015 hearing and was questioned by both her counsel and the ALJ. (R. 46-64.)  The ALJ's decision summarized these evidentiary sources as follows:

- "The claimant has remarked that she has difficulty performing some personal care tasks; however, she can perform them. … Similarly, she and her friend have indicated that she has difficulty doing housework, but she can cook, clean, and do laundry with assistance."  (R. 28 (citing Function Reports).)

- "In addition, she and her friend noted that she attends a biweekly prayer group." (*Id*.)

- "The claimant did note that she sometimes has difficulty following written instructions.  However, she and her friend both indicated that her impairments generally do not limit her ability to concentrate."  (*Id*.)

- "Moreover, the claimant did not testify to depression issues."  (R. 29 (citing Plaintiff's hearing testimony).)

- The claimant alleges that her impairments affect her abilities to lift; to squat; to bend; to stand; to reach; to walk; to sit; to kneel; to climb stairs; to complete tasks; and to sleep.  The claimant asserts that her radiculopathy affects her only on her right side.  She contends that, due to these limitations, she cannot work."  (R. 32 (citing Function Reports and Plaintiff's hearing testimony).)

---

[11] Having failed to request that the Court remand the case for consideration of additional evidence, Plaintiff waived this claim.  *See* 42 U.S.C. § 405(g)), Sentence Six; *Rodriguez v. Comm'r of Soc. Sec.*, No. 14-cv-916 (SDW), 2015 WL 413305 at n.1 (D.N.J. Jul 8, 2015) (citing 42 U.S.C. § 405(g)).

## V.    DISCUSSION

### A.    <u>Step Two.</u>

At Step Two, the ALJ found that Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (R. 28.)[12]  The ALJ considered the 4 broad functional areas for evaluating mental disorders set out in Listing 12.00 (commonly referred to as the "Paragraph B" criteria).  The ALJ concluded that Plaintiff had mild limitation in activities of daily living; no limitation as to social functioning; mild limitation in concentration, persistence, and pace; and no episodes of decompensation.  Plaintiff contends that the ALJ erred by finding that Plaintiff's depression did not satisfy the "low threshold" for demonstrating a severe impairment.  ECF No. 8 at 21; *see id.* (noting that Third Circuit "has agreed that the step two 'severity' analysis may do no more than screen out 'de minimis' claims" (citing *Bailey v. Sullivan*, 885 F.2d 52, 56-57 (3d Cir. 1989)).  Specifically, Plaintiff argues that the ALJ erred by ascribing "little" weight to Dr. Robins' opinions and by failing to request copies of his treatment records or at least raise the missing records with Plaintiff's former counsel.  *See* ECF No. 8 at 21, 23 (citing R. 29).  The Court need not decide whether the ALJ erred at Step Two as to Dr. Robins because the ALJ found that Plaintiff had severe impairments.  Having found in Plaintiff's favor at Step Two, "even if [the ALJ] had erroneously concluded that some of [Plaintiff's] other impairments were non-severe, any error was harmless." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007); *see Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 261 n.2 (3d Cir. 2006) (same).  The Court therefore finds that the ALJ's Step Two finding regarding Plaintiff's depression was supported by substantial evidence.

---

[12] Plaintiff does not dispute the ALJ's findings that obesity and hypertension were non-severe impairments.

### B. **Step Four.**

At Step Four, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she can occasionally climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch and crawl; she can occasionally operate foot controls with the right lower extremity; she can occasionally push or pull with the right lower extremity; and she would be off-task up to 5% of the day due to her ailments..

(R. 31.)  Plaintiff contends that this RFC finding is not supported by substantial evidence because the ALJ "failed to properly weigh the medical opinions regarding [Plaintiff's] physical impairments."  ECF No. 8 at 25.  The ALJ assigned "little" weight to Dr. Udomsaph's May 2013 opinion that Plaintiff's impairments do not meet the 12-month durational requirement.  (R. 34.)  The ALJ assigned "great" weight to Dr. Briski's September 2013 opinion that Plaintiff is limited to less than the full range of light work.  (R. 33.)  The ALJ ascribed "little" weight to Dr. Gaughan's October 2013 Multiple Impairment Questionnaire response and to the opinions expressed in his treatment notes that Plaintiff is completely disabled and unable to work.  (R. 33-34.)  The ALJ assigned "some" weight to Dr. Schottenstein's January 2014 Multiple Impairment Questionnaire response and "little" weight to the opinions expressed in his treatment notes that Plaintiff is "totally disabled for her current job."  (R. 33-34.)  Plaintiff argues that the ALJ ascribed too little weight to the opinions of Drs. Gaughan and Schottenstein and too much weight to the opinion of Dr. Briski.  The Court partially agrees.

A treating opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2); *see Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) ("[A]n ALJ may not make speculative inferences from medical

reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."). This deference applies to opinions that reflect judgments about the nature and severity of a claimant's impairment, including the claimant's symptoms, diagnosis and prognosis, what s/he can still do despite impairment, and his/her physical or mental restrictions.   20 CFR §§ 404.1527(a), 416.927(a).  An "opinion" that a claimant is simply unable to work thus can never be given controlling weight because that is an administrative finding reserved to the Commissioner. 20 CFR § 404.1527(d).  When a treating opinion cannot be given controlling weight, it still may be entitled to some deference based on the ALJ's consideration of the following factors, which the ALJ must also consider as to non-treating and non-examining opinions:   length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence used to support the opinion, consistency of the opinion with the entire record, and the expertise and specialized knowledge of the source.  20 C.F.R. § 404.1527(c)(2)-(6); *see Plummer*, 186 F.3d at 429 (ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided").

The Court finds that the ALJ did not err by ascribing little weight to the blanket statements Drs. Gaughan and Schottenstein repeated throughout their treatment notes that Plaintiff is completely disabled and unable to work.  These are not "opinions" entitled to deference under the treating physician rule; they are administrative findings exclusively within the ALJ's purview. However, the Court finds that the ALJ in assessing the Multiple Impairment Questionnaire responses from Drs. Gaughan and Schottenstein:

> The undersigned accords Dr. Schottenstein's January 2014 opinion some weight.
> Dr. Schottenstein opined in January 2014 that the claimant is limited to significantly
> less than the full range of light work.  Dr. Schottenstein is a medical doctor who
> treated the claimant.  However, his assessment that the claimant cannot push, pull,

kneel, bend, stoop, lift more than 15 pounds, sit more than 4 hours, or stand or walk for more than 4 hours is inconsistent with the medical evidence. This evidence demonstrates that the claimant has engaged in a home exercise program and, as a result, has shown some medical improvement; that the claimant's gait has been in tact; and that the claimant has had near full range of motion in her knee. It is also inconsistent with the claimant's own statements which indicate that she can do some housework. Nevertheless, Dr. Schottenstein's general assessment that the claimant is limited to less than the full range of light work is consistent with the evidence. Therefore the undersigned accords his January 2014 opinion some weight.

The undersigned accords Dr. Schottenstein's October 2013 opinion little weight. Dr. Schottenstein opined in October 2013 that the claimant is limited to significantly less than the full range of sedentary work. Although Dr. Schottenstein is a medical doctor who treated the claimant, this assessment is inconsistent with the evidence and with the claimant's statements as discussed above. In addition, Dr. Schottenstein's January 2014 opinion that the claimant is capable of significantly less than the full range of light work is more consistent with the evidence and with the claimant's statements. Therefore, the undersigned accords Dr. Schottenstein's October 2013 opinion little weight.

(R. 33.)  First, the ALJ erred by ascribing little weight to Dr. Gaughan's October 2013 response based on the mistaken belief that the response was prepared by Dr. Schottenstein, who prepared a less restrictive response in January 2014. Second, the ALJ erred by discounting the responses of Drs. Gaughan and Schottenstein as inconsistent with the medical evidence. Plaintiff has severe spinal and knee impairments. The home exercise program cited by the ALJ as resulting in "some medical improvement" was referenced in Dr. Popovitz's December 2014 treatment notes from Plaintiff's 6-month post-operative visit. Plaintiff began the program because she had not yet received approval from workers' compensation for continued professional physical therapy after her knee surgery. Dr. Popovitz reported that Plaintiff was still lacking some range of motion and continued to experience patellofemoral pain. He wrote:

I am again requesting that the patient resume a course of physical therapy in order to regain full range of motion and strength to reduce pain and increase her functionality. It is medically necessary that [Plaintiff] resume a course of physical therapy in order for full recovery to be made. She will in the meantime continue

with a home exercise program and will return to the office in six weeks for follow-up.

(R. 642.) Dr. Gaughan and Dr. Schottenstein each opined that Plaintiff had severe knee and spinal impairments. That Plaintiff's gait was intact and that she had near full range of motion in her knee is not inconsistent with limitations allegedly attributable to her spinal impairment. Both doctors opined based on diagnostic testing results and physical findings (including tenderness and spasm in the lumbar paraspinal muscles and decreased range of motion in the lumbar spine) that Plaintiff was limited in the number of hours – in total and without interruption – that she could sit, stand, and walk over the course of an 8-hour day. Third, the ALJ erred by discounting the responses of Drs. Gaughan and Schottenstein as inconsistent with Plaintiff's statements and testimony. That Plaintiff "can do some housework" – and, as the ALJ noted elsewhere in the decision, climb stairs to take a bath, drive home after physical therapy, or go shopping multiple times each week – is not at all inconsistent with the limitations opined by Drs. Gaughan and Schottenstein.

The Court also finds that the ALJ erred in assessing Dr. Briski's opinion:

The undersigned accords great weight to the opinion of Dr. Raymond Briski, the State [A]gency physical consultant at the Reconsideration level. Dr. Briski opined that the claimant is limited to less than the full range of light work. Dr. Briski is a medical doctor who reviewed the claimant's medical records. He did not examine the claimant. However, his general opinion that the claimant is limited to less than the full range of light work is consistent with the record as a whole. Thus, the undersigned accords his opinion great weight.

(R. 33.) First, Dr. Briski rendered his opinion in August 2013 and thus did not have an opportunity to review the functional limitations opined by Drs. Gaughan and Schottenstein in their Multiple Impairment Questionnaire responses. Second, the ALJ's decision misstated Dr. Briski's opinion. Dr. Briski did not opine that Plaintiff was limited to less than the full range of light work; he instead opined that "in twelve months [Plaintiff] will have RFC for *full range* of light work." (R. 95, 104 (emphasis added).) The limitations imposed by Dr. Briski were: frequently lift/carry up to 10

pounds and occasionally up to 20 pounds; stand, walk, and sit each for a total of 6 hours (with

normal breaks) in an 8-hour workday; and frequently climb ramps/stairs/ladders/ropes/scaffolds,

balance, stoop, kneel, crouch, or crawl.  The RFC finding included a host of more stringent and

additional limitations.  The Court cannot conduct a meaningful review without clarification as to

the ALJ's assessment of Dr. Briski's actual opinion.

The Court therefore finds that remand is warranted because the RFC finding is not

supported by substantial evidence.[13]

### C.  Plaintiff's Subjective Symptoms.

The ALJ found that, "[a]fter careful consideration of the evidence, the undersigned finds

that the claimant's medically determinable impairments reasonably could be expected to cause the

alleged symptoms; however, the claimant's statements concerning the intensity, persistence and

limiting effects of these symptoms are not entirely credible for the reasons explained in this

decision."  (R. 31-32.)  Plaintiff contends that the ALJ's credibility assessment was not supported

by substantial evidence.  The Court agrees because the ALJ's bases for discounting Plaintiff's

subjective symptoms are identical to the bases for discounting the treating physician opinions.  The

Court therefore finds that remand is warranted because the ALJ's credibility assessment is not

supported by substantial evidence.[14]

---

[13] The Court notes that, since the ALJ determined at Step Two that Plaintiff has at least one severe impairment, the ALJ must consider on remand all of Plaintiff's impairments – severe and non-severe – at Steps Three through Five.  *See* 20 C.F.R. §§ 404.1523(c), 416.923(c).

[14] Plaintiff argues that the ALJ also erred by failing to consider Plaintiff's "exemplary work history." ECF No. 8 at 34 (citing *Dombrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). The Court agrees that a claimant's testimony "is entitled to substantial credibility" under *Dombrowolsky* if the claimant has a lifetime record of continuous work.  The Court also agrees that the ALJ did not explicitly discuss Plaintiff's 22 years of earnings prior to her alleged onset dated.  Although the ALJ should consider this evidence on remand, the Court notes that the substantial credibility afforded claimant's subjective complaints under *Dobrowolsky* does not require the ALJ to accept them as fact, because the ALJ still must "furnish explanations regarding the relative weight and credibility of the evidence that was before him."  *Williams*

## V.    CONCLUSION

For these reasons, the Court reverses the Commissioner's decision that Plaintiff was not disabled and remands the case for further proceedings as set forth in the accompanying Order.

Dated:    February 6, 2019                          _____s/ Paul A. Zoss_____
At Newark, New Jersey                          PAUL A. ZOSS, U.S.M.J.

---

*v. Sec'y of HHS*, No. 93-cv-3554 (JEI), 1994 WL 808124, at *7 (D.N.J. Nov. 18, 1994); *see Sanborn v. Comm'r of Soc. Sec.*, No. 14-cv-4103, 613 F. App'x 171, 176-77 (3d Cir. Jun. 1, 2015) (no reversible error where "ALJ's credibility determination was based on a broad view of the record and would have been supported by substantial evidence regardless of whether the ALJ had explicitly considered [claimant's] employment history").